UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CROTTY

---------------------------------------------------------------------X

ODYSSEY REINSURANCE COMPANY,

                                 Petitioner,

              -against-

CERTAIN UNDERWRITERS AT LLOYD'S LONDON
SYNDICATE 53 and RELIASTAR REINSURANCE
GROUP (DK), a division of RELIASTAR LIFE
INSURANCE COMPANY,

                               Respondents.

13 CV 9014

ECF Case

**PETITION FOR ORDER
APPOINTING ARBITRATION
UMPIRE**

RECEIVED DEC 19 2013

---------------------------------------------------------------------X

Petitioner, Odyssey Reinsurance Company, which was formerly known as Odyssey America Reinsurance Corporation and TIG Reinsurance Company ("OdysseyRe"), by and through its attorneys, Clyde & Co US LLP, hereby petitions this Court under 9 U.S.C. §§ 1 et seq. of the Federal Arbitration Act ("FAA") and 9 U.S.C. §§ 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), for an order appointing an umpire to serve in the arbitration pending between OdysseyRe and the respondents, Lloyd's of London Syndicate 53 ("Syndicate 53") and ReliaStar Reinsurance Group (DK), a branch of ReliaStar Life Insurance Company ("ReliaStar") (collectively, "Respondents"). OdysseyRe respectfully requests that the Court appoint one of the three umpire candidates proposed by it to serve as umpire in this arbitration.

In support of its petition, OdysseyRe relies upon the Affirmation of Maria Orecchio with exhibits, along with the Memorandum of Law filed herewith, and further states as follows:

## THE PARTIES

1.     OdysseyRe is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Stamford, Connecticut.

2.     ReliaStar is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota.

3.     Syndicate 53 is an inactive underwriting syndicate which is part of the insurance and reinsurance market known as Lloyd's of London located in London, England. Syndicate 53 is currently managed by Shelbourne Syndicate Services Ltd.

## JURISDICTION AND VENUE

4.     This petition is submitted under the FAA, 9 U.S.C. §§1 et seq. and the Convention, 9 U.S.C. §§201 et seq.

5.     This proceeding involves retrocession contracts evincing interstate commerce within the meaning of 9 U.S.C. § 2. The retrocession contracts contain written agreements to arbitrate any dispute arising under the contracts.

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between OdysseyRe and Syndicate 53 which is a foreign unincorporated association whose members are foreign citizens and ReliaStar which is a Minnesota company that maintains its principal place of business in Minnesota. The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000).

7.     Respondents have consented to the personal jurisdiction of the Court over disputes arising under the retrocession contracts at issue and have further designated an agent for service of process in New York, New York. This Court also has personal jurisdiction over the respondent, ReliaStar, due to its business operations in New York, New York.

8.      An actual case and controversy of justiciable nature exists between the parties that involves the rights and obligations of the parties under the agreements to arbitrate contained in the retrocession contracts at issue in the underlying arbitration.

9.      Venue in this District is proper under 28 U.S.C. § 1391(c) because Respondents are subject to personal jurisdiction in this District.

## BACKGROUND

10.      Effective October 1, 1998, OdysseyRe agreed to reinsure Legion Insurance Company ("Legion") under a Casualty Second Excess of Loss Reinsurance Contract which provided specific and aggregate excess of loss coverage for various insurance policies written by Legion, including workers' compensation business (the "1998 Legion XOL Contract").

11.      With respect to the 1998 Legion XOL Contract, OdysseyRe, in turn, purchased from Respondents retrocessional coverage. Pursuant to that retrocessional coverage, ReliaStar and Syndicate 53 issued to OdysseyRe two contracts: one covering OdysseyRe for its specific excess coverage of Legion under the 1998 XOL Contract and the other covering the aggregate excess coverage under the 1998 XOL Contract (collectively, the "Retro Agreements").

12.      The Retro Agreements contain an arbitration clause which provides that "[a]ny difference of opinion between [OdysseyRe] and [Syndicate 53 and ReliaStar] with respect to the interpretation of th[e] Agreement or the performance of the obligations under th[e] Agreement shall be submitted to arbitration" before a panel of three arbitrators who "shall be officials of officials of Insurance and or Reinsurance companies authorized to transact business in one or more states of the United States of America and writing the kind of business about which the difference has arisen" (the "Arbitration Clause"). There is no dispute between the parties that the Arbitration Clause requires that the arbitrators be officials of insurance or

reinsurance companies authorized in the United States and actively writing workers' compensation business. *See* Orecchio Aff., Ex. 5, Question 6F.

13.     The Arbitration Clause also provides that the umpire shall be chosen by the party arbitrators within ten days of their appointment or by the lot method, if the party arbitrators are unable to agree upon an umpire:

> [A]n umpire [shall be chosen] by the two arbitrators before they enter upon arbitration.  If the arbitrators have not chosen an umpire at the end of ten (10) days following the last date of the selection of the two arbitrators each arbitrator shall name three of whom the other declined two and the decision shall be made of the remaining two by the drawing of lots.

14.     After failing to receive payment for certain workers' compensation-related billings under the Retro Agreements, OdysseyRe, by letter dated February 22, 2013, demanded arbitration against Respondents.

15.     Pursuant to their obligation under the Arbitration Clause, Syndicate 53 and ReliaStar appointed Robert Miller to serve as their party-appointed arbitrator.  OdysseyRe then named Scott Birrell as its party-appointed arbitrator.

16.     After Messrs. Miller and Birrell could not agree on an umpire within the ten day period called for under the Arbitration Clause, on August 21, 2013, they exchanged lists of three umpire candidates.

17.     Respondents interposed objections to one of OdysseyRe's candidates and demanded that the candidate be replaced before umpire questionnaires were sent to all six candidates.  By email dated August 23, 2013, OdysseyRe respectfully asked Respondents to withhold their objections until after receipt of questionnaire responses.  OdysseyRe also submitted to Respondents a proposed draft of the umpire questionnaire.

18.     OdysseyRe followed up with Respondents on its August 23, 2013 email communication on September 10, 2013 requesting that Respondents confirm their agreement to move forward with umpire questionnaires based on the current slate.

19.     In a telephone conference on September 30, 2013, Respondents agreed to move forward with umpire questionnaires.

20.     On October 4, 2013, questionnaires were sent to each of the six umpire candidates.

21.     By October 11, 2013, four of the six candidates – two candidates from each party's list of three names – declined to be considered for umpire.

22.     With respect to the third, remaining candidate proposed by Respondents, it was evident from his completed umpire questionnaire that he did not meet the qualification requirements set forth in the Arbitration Clause because he was not an official of an insurance or reinsurance company actively writing workers' compensation business in the United States.

23.     As a consequence, upon OdysseyRe's challenge to that candidate, Respondents withdrew his candidacy.

24.     On December 3, 2013, the parties agreed that Syndicate 53 and ReliaStar would provide three new umpire candidates to replace their original three candidates and that OdysseyRe would provide Respondents two new umpire candidates to replace two of their original three names.

25.     The exchange between the parties of new umpire candidates took place on December 5, 2013.

26.     On December 6, 2013, the parties sent to the five new umpire candidates a questionnaire to be completed and returned by December 13, 2013.

27.     Two of the new candidates proposed by Syndicate 53 and ReliaStar, however, declined to be considered.  Their third candidate, Dirk Turley, agreed to be considered for umpire and returned his questionnaire.

28.     Likewise, OdysseyRe's two additional umpire candidates, Glenn Frankel and David Bradford, also agreed to be considered and returned to the parties completed questionnaires.

29.     On December 11, 2012, OdysseyRe advised Syndicate 53 and ReliaStar that, according to Mr. Turley's disclosures, he was not qualified to serve as umpire in the arbitration. OdysseyRe further advised that if Syndicate 53 and ReliaStar failed to name three qualified candidates by close of business on December 13, 2013, OdysseyRe would have to seek the Court's assistance to appoint an umpire in the arbitration.

30.     On December 13, 2013, Syndicate 53 and ReliaStar expressed their belief that Mr. Turley was qualified and provided citations to Markel's 10-Q SEC filing and website for support.  These materials, however, failed to demonstrate that Mr. Turley is an official of a company which writes U.S. workers' compensation business.  At that time, Syndicate 53 and ReliaStar also advised that they would provide replacement names for those candidates that had declined to serve.

31.     On December 16, 2013, Syndicate 53 and ReliaStar identified two replacement candidates.  Questionnaires were sent to each of the candidates.  On December 17, 2013, both candidates declined to be considered for umpire in the arbitration.

32.     Of the thirteen total candidates proposed by the parties to serve as umpire, only five of them agreed to be considered and submitted completed questionnaires: two of those five were nominated by Respondents and three were nominated by OdysseyRe.

33.     After withdrawing one of their two candidates from consideration (as discussed above in paragraphs 22 and 23), the Respondents' only remaining candidate is Dirk Turley. However, it is clear from Mr. Turley's completed umpire questionnaire that he does not meet the umpire qualifications requirements set out in the Arbitration Clause, *i.e.*, he is not an "official[] of Insurance and or Reinsurance companies authorized to transact business in one or more states of the United States of America and writing the kind of business about which the difference has arisen".

34.     In his questionnaire, Mr. Turley identifies his employer as "Markel International, Zurich". Although there is no Markel entity by that name, there is a company called "Markel International Insurance Company Ltd." ("MIICL").

35.     In response to the question of whether he meets the qualification requirements under the Arbitration Clause, Mr. Turley states "yes" under the theory that "Markel at Lloyds Syndicate 3000" – but not his employer, Markel International, Zurich or MIICL – "writes workers' compensation reinsurance in the U.S."

36.     Even if Mr. Turley were an official of Markel Lloyd's Syndicate 3000, Markel's SEC 10-Q filing establishes that the Syndicate does not write workers' compensation business in the U.S.

37.     Furthermore, even assuming that Syndicate 3000 wrote workers' compensation insurance or reinsurance in the U.S., Mr. Turley is not an officer of Syndicate 3000, or of the Syndicate's corporate investor, Markel Capital Limited. Rather, Mr. Turley represents that he is the "General Manager & Underwriting Manager" of "Markel International, Zurich" or MIICL. Mr. Turley therefore does not satisfy the qualification requirements under the Arbitration Clause.

38.     In contrast, each one of three remaining umpire candidates proposed by OdysseyRe are exceptionally well qualified and suited to serve as umpire.

39.     Their umpire questionnaires reveal that they have a wealth of industry experience to resolve the parties' dispute here in a fair and effective manner.

40.     Anthony Vidovich has over thirteen years of insurance and reinsurance experience.  He currently serves as a Senior Vice President and Assistant General Counsel of The Hartford Financial Services Group, where he is involved in handling insurance and reinsurance claims and underwriting issues.  Mr. Vidovich also serves as an officer of Hartford Fire Insurance Company which writes workers' compensation insurance in the United States.

41.     Mr. Vidovich is certified to serve as an arbitrator by ARIAS-U.S., the leading reinsurance dispute resolution organization in the United States.  ARIAS-U.S. certification has been recognized by many courts as an important, positive factor in evaluating candidates for arbitrator appointments in insurance and reinsurance disputes.

42.     According to Mr. Vidovich's ARIAS-U.S. profile his experience specifically includes workers' compensation business.  Mr. Vidovich's experience also includes twice serving as a party-appointed arbitrator and twice as an umpire in reinsurance disputes.  Mr. Vidovich has lectured at insurance/reinsurance industry conferences, including at ARIAS-U.S. conferences, and has published numerous articles on topics including reinsurance dispute resolution alternatives.

43.     While Mr. Vidovich admits to having industry relationships with both Petitioner and Respondents, these dealings in no way bar his service or otherwise disqualify him from serving as an umpire here.

44.     David Bradford is a seasoned veteran of the insurance and reinsurance industry, and meets the qualification requirements in the Arbitration Clause.  He currently serves as

Vice President and Senior Assistant General Counsel of Zurich American Insurance Company which writes workers' compensation business in the United States. Mr. Bradford is a member of ARIAS-U.S. and he has authored several insurance related articles. Mr. Bradford's disclosures also reveal that he does not have any significant relationship, financial or otherwise, with any of the parties or counsel to this arbitration.

45.     Glenn Frankel has over sixteen years of experience in the insurance and reinsurance industry. He currently serves as Vice President of Reinsurance for The Hartford and serves as an officer of Hartford Fire Insurance Company which, as noted above in paragraph 39, writes workers' compensation business in the United States. Mr. Frankel is active in industry associations and has lectured at various insurance and reinsurance industry conferences. As detailed on his CV, Mr. Frankel currently serves on the Board of Directors of the Association of Insurance & Reinsurance Run-Off Companies ("AIRROC") and is the chairman of AIRROC's Dispute Resolution Procedure Committee. While Mr. Frankel also has industry relationships with both Petitioner and Respondents, his questionnaire demonstrates that he has no disabling conflicts to serve as umpire in this arbitration.

## CLAIM FOR RELIEF

46.     It has been almost year since OdysseyRe demanded arbitration, and no umpire has been selected to serve in the Arbitration.

47.     Unlike OdysseyRe, Syndicate 53 and ReliaStar have not named three qualified candidates as required under the Arbitration Clause.

48.     Because the method of selecting an umpire in the Arbitration Clause has failed, OdysseyRe respectfully asks the Court to select as umpire in the arbitration one of the three candidates it has proposed: Mr. Anthony Vidovich, Mr. David Bradford or Mr. Glenn Frankel.

**WHEREFORE,** for the reasons stated herein, and as explained in the accompanying

Memorandum of Law and Affirmation of Maria Orecchio with exhibits, OdysseyRe

respectfully requests that this Court enter an order appointing as umpire Mr. Vidovich, Mr.

Bradford or Mr. Frankel.

Dated:  New York, New York
        December 19, 2013

                                    Respectfully Submitted,

                                    CLYDE & CO US LLP


                                    Stephen M. Kennedy (SK-5572)
                                    Maria Orecchio (MO-9659)
                                    The Chrysler Building
                                    405 Lexington Avenue – 16th Floor
                                    New York, NY 10174
                                    Telephone (212) 710-3900
                                    Fax (212) 710-3850
                                    stephen.kennedy@clydeco.us
                                    maria.orechio@clydeco.us